UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KAREY A. GARLING,<br>       Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security<br>Administration,<br>       Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 3:20-CV-369-DRL-JPK<br>)<br>)<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1] and Plaintiff's Brief in Support of Her Request for Review [DE 17]. Defendant filed a response, and Plaintiff filed a reply.

On July 20, 2020, District Court Judge Damon R. Leichty entered an Order [DE 11] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On November 10, 2017, Plaintiff filed an application for disability insurance benefits, alleging disability as of July 27, 2017. Plaintiff later amended the alleged onset date to August 1, 2017. The claim was denied initially and on reconsideration. Plaintiff requested a hearing, which

was held before an Administrative Law Judge (ALJ) on March 6, 2019. On May 2, 2019, the ALJ issued an unfavorable decision, making the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2017, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), right shoulder degenerative joint disease, obesity, fibromyalgia, depression, anxiety, a personality disorder, and attention deficit hyperactivity disorder (ADHD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, [the ALJ found] that the claimant has the residual functional capacity to perform light work. She can lift, carry, push, and/or pull up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds; occasional ramps and stairs; occasional balance, stoop, kneel, crouch, but never crawl. She must avoid all exposure to unprotected heights or moving mechanical parts. No overhead reaching with the right upper extremity, frequent reaching in all other directions with the right upper extremity. She can understand and remember simple instructions and can carry out simple tasks with simple work-related decisions and judgments in two-hour segments, again allowing for normal breaks. She can tolerate occasional interaction with supervisors and coworkers. No interaction with the general public as part of the job duties and no tandem tasks. She can manage the stresses involved with simple work. She can tolerate occasional exposure to dust, fumes, odors, gases, poor ventilation. She must avoid all exposure to extreme cold, extreme heat, or humidity as part of the job duties.
>
> 6. The claimant is unable to perform any past relevant work.

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2

    7.    The claimant was born [in 1972] and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

    8.    The claimant has at least a high school education and is able to communicate in English.

    9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2017, through the date of this decision.

(AR 12-19[2]).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment

4

or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts several grounds for reversal of the ALJ's decision: (1) the ALJ erred in arriving at the RFC determination, (2) the ALJ erred in failing to address an applicable listing at step three, (3) the ALJ's decision lacks a complete, updated state agency opinion, and (4) the ALJ's step five determination is unsupported. (Pl.'s Br. 9-25, ECF No. 17).

### A. Residual Functional Capacity

Plaintiff argues that the ALJ failed to construct a logical bridge in arriving at the RFC determination. (Pl.'s Br. 16-25, ECF No. 17). Although Plaintiff alleges numerous flaws with the RFC, the Court's analysis focuses on the following allegations: (1) that the RFC fails to accommodate all of Plaintiff's physical and mental limitations, (2) that the ALJ erred in

5

considering numerous medical opinions, and (3) that the ALJ erred by failing to consider in their entirety the statements of Plaintiff's father.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

*1. Plaintiff's Physical and Mental Limitations*

Regarding her physical limitations, Plaintiff asserts that the RFC fails to accommodate her need to change positions and further fails to account for her limitations due to degenerative disc disease, obesity, fibromyalgia, and hip pain. (Pl.'s Br. 16-17, ECF No. 17). Specifically, Plaintiff testified that she can only stand for ten to fifteen minutes at a time and sit for thirty minutes at a time, and that doing so any longer aggravates her hip and back pain. (AR 36-37, 40-44). Plaintiff further testified that she lies down for up to four hours during the day due to pain and fatigue. (AR 45-46).

As noted above, in arriving at the RFC, the ALJ must consider—but of course need not accept—*all* allegations of physical and mental limitations. SSR 96-8p, at *5. The ALJ failed to consider these limitations, or explain why they were not considered, and thereby failed to construct a logical bridge between the evidence and the RFC determination. The ALJ was entitled to make a determination as to the credibility of Plaintiff's subjective symptoms, but he was not entitled to simply ignore allegations regarding her physical limitations, especially one that could preclude the ability to perform full time work.

As for her mental limitations, Plaintiff argues that the ALJ impermissibly cherry-picked evidence of normal mental status findings and ignored evidence revealing greater limitations. (Pl.'s Br. 18-21, ECF No. 17). Plaintiff points to records indicating that she has difficulty with arithmetic, has cognitive functioning in the low-average range, has trouble remembering to take medication, has little motivation for basic self-care, became easily upset, and is incapable of handling funds. *Id.* at 18 (citing AR 296, 369-71). Plaintiff points to additional records and her testimony, which reflect that she has fatigue, trouble with anxiety and mood, poor short- and long-term memory, interpersonal issues, and that she requires help from her son to complete certain common tasks. *Id.*

7

at 18-19 (citing AR 37-39, 46-47, 63, 222-23, 225, 227-28, 237, 296, 369-71, 453-56, 473-75, 479-80, 559-60, 610-13, 618-30, 629, 663-64, 666, 675-76, 684, 692-93, 703-06, 708-09, 715-29, 738-49).

The ALJ also failed to mention or discuss almost the entirety of a record regarding Plaintiff's mental health, spanning over one hundred-fifty pages and covering two years of treatment. (*See* AR 597-753). The ALJ cited to this record only once, cursorily noting that it reflected that Plaintiff has "poor memory." (AR 14). In doing so, the ALJ omitted any discussion of the portions of this record indicating that Plaintiff presented with anxiety, depressed mood/persistent sadness, impulsiveness, irritability, racing thoughts, and concentration issues. (AR 619). The record further reveals that Plaintiff appeared anxious, sad, angry, and restless, and was tearful throughout multiple sessions. (AR 663-64, 666, 675, 684, 692-93, 703, 705-06, 708-09, 729, 738, 740-41). Still other portions of this record reveal that Plaintiff has a hostile, dependent relationship with both her father and romantic partner, that she had "an explosive episode" with an individual over an issue involving her father's business, and that she has had thoughts about physically and verbally assaulting others. (AR 664, 715, 721). In the clinician's observations from one session, it was noted that Plaintiff seemed to be "decompensating." (AR 716). The ALJ noted the findings of Dr. John Heroldt—a state agency examining physician whose opinion was not assigned a specific weight by the ALJ—as showing that Plaintiff was cooperative and had logical and coherent thoughts. (AR 16-17 (citing AR 369-73[3])). While the ALJ did cite certain negative findings in Dr. Heroldt's report, including that Plaintiff had a flat affect, was easily irritated, and had below average memory, the ALJ nonetheless omitted that Plaintiff presented with soiled clothing, fought off tears at several points during the examination, and had below average

---

[3] Specifically, the ALJ cited to Exhibit B6F, the doctor's written report of his mental status examination, which appears at (AR 369-373) in the record.

cognitive development. (AR 14, 16, 371). Dr. Heroldt additionally observed that Plaintiff had no eyelashes, which she told him was because she pulled them out due to issues with trichotillomania. (AR 369, 371). The ALJ's omission of any substantive discussion of the evidence in this record is especially concerning in light of the ALJ's finding that Plaintiff has the severe impairments of, *inter alia*, depression, anxiety, a personality disorder, and attention deficit hyperactivity disorder. (AR 12). In neglecting to address this record almost in its entirety, the ALJ failed to construct a logical bridge between the medical evidence in the record and the mental limitations included in the RFC.

While the Court will not second guess an ALJ by reweighing evidence or substituting its judgement for that of the ALJ, remand is appropriate in instances where an ALJ cherry-picks evidence in support of an outcome, yet fails to address evidence that would undercut the ALJ's ultimate determination. *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (ALJ improperly credited statements in medical opinion "that support[ed] a finding of non-disability" but "ignored others making plain that [the plaintiff] had serious neck and back problems"); *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (ALJ "misconstrued (or worse, cherry-picked)" statements from medical opinion relied upon: "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings"). Such was the case here. Accordingly, the Court recommends remand for proper consideration of Plaintiff's physical and mental limitations.

*2. Physician Opinions*

Plaintiff next argues that the ALJ erred in considering the medical opinions. (Pl.'s Br. 21-24, ECF No. 17). Although Plaintiff objects to the ALJ's analysis of five different medical

opinions, the Court focuses its analysis on the opinions of Drs. Gutierrez, Heroldt, Stephen Kennedy, and Alan Wax.

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. § 404.1520c. For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ need not defer or give any specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c. Medical opinions are weighed by considering the following factors: (1) Supportability used by the medical source to support his opinion; (2) Consistency of the medical opinion with the other evidence in the record; (3) Relationship with the claimant, including the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) Specialization of the medical source; and (5) Other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination. 20 C.F.R. § 404.1520c(b)(2). Regulations provide that when an ALJ is looking at the supportability and consistency of a medical opinion, these terms mean:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ found Dr. Gutierrez's opinion unpersuasive because it "was based on only one examination," "is not consistent with all the other evidence in the record," and because

Dr. Gutierrez "did not provide any specific functional limitations." (AR 17). The ALJ further found unpersuasive the opinion of Dr. Kennedy, a state agency consultative examining physician, because it was "not consistent with all the other evidence in the record from all other sources," it "was based on only one examination," "there is a great deal of evidence [that Dr. Kennedy] was not able to review," and the "opinion was given almost two years before [Plaintiff's] alleged onset date." (AR 17). But the ALJ failed to cite to any of the supposed inconsistencies between Dr. Gutierrez's and Dr. Kennedy's opinions and the other evidence in the record. Without such an explanation, the Court is unable to trace the path of the ALJ's reasoning and be assured that he considered the important evidence. *See Scott*, 297 F.3d at 595. Furthermore, the Seventh Circuit Court of Appeals has explained that "rejecting or discounting the opinion of the agency's own examining physician" calls for "a good explanation." *Beardsley*, 758 F.3d at 839; *see also Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013) (noting that an examining agency physician is "unlikely . . . to exaggerate an applicant's disability"). The ALJ's cursory rejection of Drs. Gutierrez's and Kennedy's opinions falls short of this requirement.

The ALJ found Dr. Wax's opinion to be "irrelevant to the period before more," (AR 17), and offered no further explanation or analysis of the opinion. Although this statement is unclear, the Court infers that the ALJ discounted the opinion because it discussed Plaintiff's condition prior to the alleged disability onset date. The opinion itself was a report of a psychological evaluation conducted on August 12, 2015, roughly two years before the alleged onset date of August 1, 2017. *See* (AR 293-296). The doctor concluded, in part, that Plaintiff suffered from generalized anxiety disorder and major depressive disorder. (AR 296). Although pre-onset medical opinions are not necessarily probative of disability, the ALJ must consider them, along with all the other evidence in the record. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (holding that failure to address

11

medical opinions rendered two years prior to the alleged onset date was reversible error: "An ALJ must consider all medical opinions in the record."). In this case, there appears to be substantial overlap between Dr. Wax's prior diagnoses and the severe impairments of "anxiety" and "depression" identified by the ALJ. The ALJ did not adequately explain why Dr. Wax's opinion was no longer relevant, so his failure to consider the opinion was error.

Finally, the ALJ failed to assess the opinion of Dr. Heroldt entirely. As explained above, the ALJ noted certain negative findings opined by Dr. Heroldt regarding Plaintiff's mental impairments, but omitted findings that revealed greater mental limitations than those included in the RFC. (AR 14, 16, 369-73). Ultimately, the ALJ did not evaluate Dr. Heroldt's opinion and explain how much weight it was given, with reference to the regulatory factors, and his failure to do so was error. *See* 20 C.F.R. § 404.1520c.

Accordingly, the Court recommends remand for proper evaluation of the medical opinions and the weight to be given to each opinion in accordance with the relevant regulations.

*3. Plaintiff's Father's Statements*

Plaintiff argues that the ALJ erred by failing to consider the statements of Plaintiff's father in their entirety. (Pl.'s Br. 25-26, ECF No. 17). The Commissioner responds that, because Plaintiff's father is a non-medical source, "the ALJ is not required to articulate how he considered" this evidence.[4] (Def.'s Mem. 6 n.5, ECF No. 18 (citing 20 C.F.R. § 404.1520c(d))). But that statement does not follow from the applicable law. Per 20 C.F.R. § 404.1520c, an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources *using the*

---

[4] Even if the Commissioner's statement of law was correct, the ALJ provided no indication that he considered the report in any form, nor did he reference that justification in his decision. The Commissioner cannot defend the ALJ's decision on grounds not provided in the decision itself. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (discussing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), which "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced").

*requirements in paragraphs (a)-(c) of this section.*" 20 C.F.R. § 404.1520c(d) (emphasis added). Paragraphs (a)-(c) of Section 404.1520c describe how the ALJ must consider and articulate medical opinions—paragraph (d) simply clarifies that an ALJ is not required to apply those factors to a nonmedical opinion. *See id.*, § 404.1520c. Indeed, an ALJ is specifically required to consider all medical and nonmedical evidence, including third party function reports. See 20 C.F.R. § 404.1529(c)(3).

Social Security Ruling 16-3p explicitly requires the ALJ to "consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017). In this case, the ALJ neglected to mention the third-party function report completed by Plaintiff's father at any point in the decision. The report contained observations that aligned with Plaintiff's own subjective symptom allegations. Plaintiff's father stated that she tries to take care of her child and pets but becomes very tired, that she cannot do anything, and that her conditions cause her to sleep too much or not enough. (AR 232). Plaintiff's father further observed that she needs someone to help her get dressed, that she has a hard time bathing and caring for her hair, and that she needs reminders "all the time" to take care of her personal needs and grooming. (AR 232-33). Finally, her father noted that Plaintiff does not do chores because she is too tired, that she goes outside and goes shopping very little, and that handling money is very hard for her and confuses her. (AR 233-35). The father's statements at least partially supported Plaintiff's, and the ALJ failed to "consider [the statements] in terms of how consistent those observations are" with Plaintiff's own statements, as the agency's rules require. SSR 16-3p, 2017 WL 5180304, at *7. Accordingly, the Court recommends remand for proper consideration of the third-party statement of Plaintiff's father.

### B. Remaining Allegations

Plaintiff identifies several other errors that she argues merit remand. She argues that the ALJ should have considered whether Plaintiff's impairments met or equaled Listing 1.04, improperly relied on administrative findings of the state agency medical and psychological consultants, and failed to establish that Plaintiff could perform the jobs identified at step five. Because the Court recommends remand on other grounds, the Court will not address these issues. On remand, the ALJ should consider any appropriate Listings necessary to allow meaningful judicial review of the findings at step three, properly consider the weight to be given to the opinions of the state agency consultants in light of when the opinions were rendered and all medical evidence in the record, and incorporate all appropriate limitations into the hypotheticals posed to the Vocational Expert at the hearing.

### CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of Her Request for Review [DE 17]. and **REVERSE** the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank*

*v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller,* 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 20th day of July, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
